UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Rebecca Perta, *Plaintiff,* v. Bettenhausen Motor Sales, Inc., D/B/A Bettenhausen Jeep of Orland Park; Santander Consumer USA Inc.; Tek-Collect Incorporated; *Defendants.* | Case No. 17-cv-7574<br><br>Judge:<br><br>Magistrate Judge:<br><br>JURY DEMANDED |

## COMPLAINT

NOW COMES the Plaintiff, REBECCA PERTA ("Ms. Perta") by and through her attorneys, ZAMPARO LAW GROUP, P.C., and complaining of the Defendants BETTENHAUSEN MOTOR SALES, INC., D/B/A BETTENHAUSEN JEEP OF ORLAND PARK ("Bettenhausen"), SANTANDER CONSUMER USA INC. ("Santander"), and TEK-COLLECT INCORPORATED ("Tek-Collect") alleges as follows:

### NATURE *of the* ACTION

1. Ms. Perta brings this action in response to Defendant Bettenhausen's unlawful acts in forging her signature on an altered retail installment contract for the purchase of a vehicle, inflating the interest and price she agreed to pay, and failing to notify her that she did not qualify for financing at the terms she agreed to.

2. Ms. Perta joins Defendants Santander and Tek-Collect seeking a declaratory judgment that any debt owed to them is void as a result of Bettenhausen's fraud.

3. Ms. Perta alleges causes of action under the Federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. §1691, *et seq*; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et*

*seq*; Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq*; Fraud; and the Declaratory Judgment Act, 28 U.S.C. §2201.

## **JURISDICTION *and* VENUE**

4. This action arises under and is brought under ECOA and TILA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1691 and 28 U.S.C. §§ 1331 & 1337, as the actions arise under the laws of the United States.

5. This court may exercise supplemental jurisdiction over the related state law claims arising out of the same nucleus of operative facts which give rise to the Federal law claims under 28 U.S.C. § 1367.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendants transact business in this District and Defendants' collection communications and practices affected—and continue to affect—Ms. Perta within this District.

## ***The* PARTIES**

7. Ms. Perta is a natural person who at all relevant times resided and currently resides in this District.

8. Defendant Bettenhausen is an Illinois corporation with its principal place of business located at 17514 South Oak Park Avenue, Tinley Park, Illinois.

9. At all times relevant, Defendant Bettenhausen operated an automobile dealership located at 15941 S 94th Ave, Orland Park, IL 60462 known as Bettenhausen Jeep of Orland Park.

10. Defendant Santander is an Illinois corporation with its principal place of business located at 1601 Elm Street, Suite 800, Dallas, Texas.

11. At all times relevant, Defendant Santander was and is a specialized consumer finance company focused on vehicle finance and unsecured consumer lending products. Santander's

primary business is the indirect origination of retail installment contracts principally through manufacturer-franchised dealers in connection with their sale of new and used vehicles to retail consumers.

12. Defendant Tek-Collect is an Ohio corporation with offices at 1111 Shrock Road, Suite 100, Columbus, OH 43229.

13. Tek-Collect operates a collection agency and does business in Illinois.

**Facts**

14. On April 5, 2013, Ms. Perta wanted to buy a new car. She was advised by an acquaintance to go see Jon Thongphadith ("Jon"), an employee Finance Manager of Defendant Bettenhausen who worked at the Bettenhausen Jeep of Orland Park located at 15941 S 94th Ave, Orland Park, IL 60462.

15. Upon arriving, Jon had already picked out a new (2013) Chrysler 200 sedan and had begun drawing up the paperwork necessary for Ms. Perta to finance its purchase and trade in her used Dodge Caliber sedan.

16. Ms. Perta expressed interest in buying the Chrysler sedan, and supplied Bettenhausen Sales Associate Dave Carroll ("Dave") with her financial history and documentation.

17. Dave presented Ms. Perta with an Illinois Standard Buyer's Order ("ISBO") outlining the terms of the sale:

| Purchase Price: | $20,329.00 |
|---|---|
| Sub-Total: | $24,334.00 |
| Down Payment: | $2,500.00 |
| Total: | $21,834.00 |

18. Ms. Perta agreed to these terms and signed the ISBO. A copy of said ISBO is attached and incorporated hereto as Exhibit 1.

19. Jon then advised Ms. Perta that she had qualified for financing with Americredit Financial Services, Inc.

20. Dave presented Ms. Perta with a Retail Installment Contract (RIC #1), attached and incorporated hereto as Exhibit 2, listed as No. 528475475, under which Ms. Perta would finance the purchase at the following terms:

| | |
|---|---|
| Cash Price: | $23,481.00 |
| Down Payment: | $5,500.00 |
| Amount Financed: | $21,834.00 |
| APR: | 15% |
| Finance Charge: | $11,406.96 |
| Total Sale Price: | $38,740.96 |
| Finance Company: | Americredit Financial Services |
| Monthly Payment: | $461.68 |
| Installments: | 71 |

21. Jon stated that Ms. Perta would only need to pay $500 as a down payment and summarily explained to her that her interest would be 15% and her monthly payments would be $461.68.

22. Ms. Perta asked Jon if the loan could be paid off in fewer installments, and Jon told her he would look into it but that she would need to sign this agreement to "lock-in" her purchase.

23. Jon encouraged Ms. Perta to sign RIC #1 without reading it.

24. Ms. Perta signed RIC #1 without reading the terms.

25. Ms. Perta gave Dave her credit card information to make the $500 down payment and left with the new Chrysler.

26. The following day, Bettenhausen charged her credit card $500. A copy of the receipt for said payment is attached and incorporated hereto as Exhibit 3.

27. Over one month after she purchased the vehicle from Bettenhausen, namely on May 6th, 2013, around 8:00p.m., Ms. Perta received a telephone call from Jon who informed her that she needed to return to Bettenhausen Jeep of Orland Park to sign additional paperwork and make a larger down payment.

28. Ms. Perta arrived at Bettenhausen Jeep of Orland Park around 8:50p.m. and met with Jon, who presented her with several documents and instructed her to sign:

    i. A second Illinois Standard Buyer's Order;
    ii. An Agreement to Furnish Insurance Policy;
    iii. MOPAR Vehicle Protection Plan;
    iv. Title; and
    v. Odometer Disclosure Statement
    Copies of said documents are attached hereto and incorporated as Group Exhibit 4.

29. Ms. Perta signed the additional documents and gave Jon written authorization to run her credit card to make an additional $1,500 down payment. A copy of the receipt for said payment is attached hereto as Exhibit 5.

30. Jon informed Ms. Perta that they would mail her copies of the paperwork she signed.

31. Ms. Perta did not receive any paperwork. Instead, approximately two weeks later, Ms. Perta received a call from Santander stating she was behind on her payment of $556.18. Prior to receiving this telephone call, Ms. Perta had never heard of Santander nor had any dealings with them.

32. Ms. Perta was confused and called Jon at Bettenhausen seeking clarification.

33. Jon told Ms. Perta that Santander was "essentially the same company" as Americredit Financial Services, and that the increase in payment was a result of her having fewer

installments as she originally requested. Jon indicated her loan now called for only 60 monthly payments.

34. Ms. Perta believed Jon and thought his response made sense.

35. Ms. Perta made her payment to Santander and continued to make her subsequent payments of $556.18 to Santander.

36. Ms. Perta called Bettenhausen several times to request a copy of her contract and other documents, but she never received them.

37. In September of 2016, having not received a statement of her account in some time, Ms. Perta called Santander to check the payoff and thought that the number seemed a bit high. Ms. Perta asked Santander to send her a copy of the contract and any other documentation they had supporting the debt.

38. In response, Santander mailed Ms. Perta a Retail Installment Contract (RIC#2) that she had never seen before. This RIC, dated May 6, 2013 had the following terms:

| Cash Price: | $26,006.00 |
|---|---|
| Down Payment: | $6,500.00 |
| Amount Financed: | $21,675.00 |
| APR: | 22.92% |
| Finance Charge: | $18,369.09 |
| Total Sale Price: | $47,598.62 |
| Finance Company: | Santander Consumer USA |
| Monthly Payment: | $556.18 |
| Installments: | 71 |

39. Ms. Perta immediately noticed that her signature on RIC #2 had clearly been forged. In fact, whoever forged her signature misspelled her first name. A copy of RIC #2 is attached and incorporated hereto as Exhibit 5.

40. Ms. Perta immediately drove to Bettenhausen Jeep of Orland Park and demanded to see a copy of her contract.

41. A Bettenhausen employee informed her they did not have anything on premises and that she would need to wait for them to order the documents from a warehouse.

42. Ms. Perta demanded to see what, if anything, they had in her file.

43. A Bettenhausen employee then produced yet another different Retail Installment Contract (RIC #3), which bears a different down payment and monthly payment but otherwise resembles the terms listed on RIC #2. This RIC bears no signature. A copy of said RIC is attached and incorporated hereto as Exhibit 6.

44. Ms. Perta received a phone call from Bettenhausen a few days later and was told they had a copy of her contract. She drove over and saw that the contract they had in their file was a copy of the forged contract she had received from Santander (RIC #2).

### *The* Bait, Switch *and* Forgery

45. At all relevant times, Bettenhausen employees were acting as agents of Defendant Bettenhausen.

46. When Bettenhausen employees first sold Ms. Perta her Chrylser, they told her that she had been approved for financing.

47. Bettenhausen employees did not wait for the first finance company, Americredit Financial Services, to accept assignment of the contract; instead it handed Ms. Perta the keys and told her that the car was hers.

48. On information and belief, shortly after Ms. Perta left the lot on April 5, 2013, Americredit Financial Services informed Bettenhausen employees that it would not approve the proposed financing for Ms. Perta.

49. On information and belief, this left Bettenhausen with a choice. Honoring the original deal promised to Ms. Perta meant Americredit Financial Services would not pay Bettenhausen for the contract and would instead act only as a billing service, accepting monthly payments from Ms. Perta.

50. On information and belief, in order to rectify that problem, Bettenhausen employees invited Ms. Perta back to the dealership on May 6, 2013 to have her sign additional paperwork ancillary to a second Retail Installment Contract funded by Santander—but did not have her sign the second RIC.

51. In so doing, Bettenhausen employees misled Ms. Perta into believing they were honoring the terms of RIC #1.

52. Instead, on information and belief, the employees for Bettenhausen waited for Ms. Perta to leave the lot the second time before forging her signature on RIC #2, assigning the loan to Santander, and getting paid.

53. As a direct result of Bettenhausen's lies and subsequent fraudulent concealment of its forgery, Ms. Perta had no reason to believe her account was amiss and did not discover RIC #2 and her forged signature until September of 2016.

## COUNT I:
### Violation *of* ECOA
### *Against Bettenhausen*

54. Plaintiff incorporates and realleges paragraphs 1-51.

55. Ms. Perta is a "person" as defined by 15 U.S.C. §1691a.

56. Bettenhausen is a "creditor" as defined by 15 U.S.C. §1691a: all all relevant times, in the regular course of its business, Bettenhausen accepts and processes consumer credit applications, and regularly arranges for the extension, renewal, or continuation of credit.

57. ECOA prohibits a creditor from "den[ying]" or "revo[king]" credit or "chang[ing]" the "terms of an existing credit arrangement" without providing the consumer with a "statement of reasons for such action." 15 U.S.C. §§ 1691(d)(6), (d)(2).

58. Bettenhausen failed to give Ms. Perta a statement for the reason that it revoked her credit at the terms agreed to in RIC #1.

59. Bettenhausen failed to give Ms. Perta a statement for the reason that it attempted to change the terms of her existing credit arrangement by forging her signature on RIC #2.

60. As a result of its violation, Ms. Perta is entitled to statutory damages of $10,000.00 per violation, plus attorneys' fees and costs under 15 U.S.C. 1691e(d).

61. Ms. Perta suffered actual damages as a result of Bettenhausen's acts: because she did not receive an adverse action notice from Bettenhausen as required under ECOA, she was unaware that the terms of her contract had been revoked and changed into a far less financially favorable deal. The terms of RIC #2 are substantially worse and impose a much larger finance charge, down payment, monthly payment and purchase price.

WHEREFORE, Plaintiff Ms. Perta respectfully requests this Honorable Court:

    I.       Find that Bettenhausen violated the ECOA by failing to give a required notice to Ms. Perta when it revoked and changed her credit arrangement;

    II.      Award Ms. Perta $10,000 in statutory damages;

    III.     Award Ms. Perta her actual damages;

    IV.     Award Ms. Perta her attorney's fees and costs under 15 U.S.C. 1691e(d); and

    V.      Any other such relief this Honorable Court finds just.

## COUNT II
## Violation *of* TILA
### *Against Bettenhausen*

62. Plaintiff incorporates and realleges paragraphs 1-51.

63. At all relevant times Bettenhausen—in the ordinary course of its business – regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which, by written agreement is payable in more than 4 installments and is the person to whom the transaction which is the subject of this action is initially payable, and is a "creditor" under TILA, 15 U.S.C. §1602(f) and regulation Z § 226.2(a)(17).

64. Bettenhausen failed to accurately disclose the cash price of the vehicle as including the additional funds that it subsequently claimed it was entitled to in RIC #2—including the increased down payment.

65. Bettenhausen failed to disclose that it would essentially rewrite the terms of the contract, violating 15 U.S.C. § 1638; 16 CFR § 226.18. 57. The failure to properly disclose the cash price of the vehicle, coupled with its increase of the interest rate, consequently caused a failure to inaccurately disclose the amount financed in violation of 15 U.S.C. § 1638; 16 CFR § 226.18 (b) and (c).

66. Bettenhausen failed to accurately disclose and itemize the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

67. As a consequence of failing to accurately state the actual finance charge, Bettenhausen also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

68. Ms. Perta suffered actual damages as a result of Bettenhausen's failure to disclose: because she did not receive the necessary disclosures from Bettenhausen as required under TILA, she was unaware that the terms of her contract had been revoked and changed into a far less financially favorable deal. The terms of RIC #2 are substantially worse and impose a much larger finance charge, down payment, monthly payment and purchase price.

WHEREFORE, Plaintiff Ms. Perta respectfully requests this Honorable Court:

I. Find that Bettenhausen violated TILA by failing to make the necessary disclosures;

II. Award Ms. Perta an amount equal to twice the additional finance charge under 15 U.S.C. § 1640(2)(A)(i);

III. Award Ms. Perta her actual damages;

IV. Award Ms. Perta her attorney's fees and costs under 15 U.S.C. 1691e(d); and

V. Any other such relief this Honorable Court finds just.

## COUNT III
### Violation *of* ICFA
*Against Bettenhausen—Both Unfair & Deceptive Practices*

69. Plaintiff incorporates and realleges paragraphs 1-51.

70. Plaintiff is a "person" and "consumer" as defined under the ICFA.

71. Defendant Bettenhausen is a "person" as defined under the ICFA who at all relevant times was engaged in trade and commerce within Illinois.

72. Defendant Bettenhausen violated 815 ILCS 505/2 by engaging in both unfair and deceptive act or practice by using fraud, deception, and misrepresentation in the sale and financing of a vehicle to Ms. Perta.

73. The Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) states:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. 815 ILCS 505/2.**

74. Ms. Perta suffered actual damages as a result of Bettenhausen's acts: because of Bettenhausen's unfair and deceptive actions, Ms. Perta unknowingly made payments on a

debt at terms far worse than those she agreed to. The terms of RIC #2 are substantially worse and impose a much larger finance charge, down payment, monthly payment and purchase price.

WHEREFORE, Plaintiff Ms. Perta respectfully requests this Honorable Court:

I. Find that defendant's conduct violated the ICFA;
II. Award Ms. Perta actual damages;
III. Award Ms. Perta punitive damages as allowed under the ICFA;
IV. Award Ms. Perta her Attorney's fees, litigation expenses and costs of suit as allowed under the ICFA; and
V. Any other such relief this Honorable Court finds just.

## COUNT IV
## Common Law Fraud
### *Against Bettenhausen*

75. Plaintiff incorporates and realleges paragraphs 1-51.

76. Defendant Bettenhausen's employees made false statements of material fact when they told Ms. Perta:

    i. That her RIC (RIC #1) was shortened to 60 months which accounted for the higher monthly payments;
    ii. That Americredit Financial Services and Santander were one and the same company;
    iii. That the documents she signed on May 6, 2013 were in furtherance of RIC #1; and
    iv. That they were unable to give her a copy of her contract.

77. Defendant Bettenhausen's employees made false statements of material fact when they represented to Santander that Ms. Perta had in fact signed RIC #2.

78. At all relevant times, Bettenhausen's employees knew said statements were false.

79. At all relevant times, Bettenhausen's employees intended that Ms. Perta and Santander rely on their false statements of material fact.

80. Santander's and Ms. Perta's reliance on Bettenhausen's false statements of material fact was reasonable.

81. Ms. Perta suffered actual damages as a result of Bettenhausen's acts: because of Bettenhausen's fraud and forgery, Ms. Perta unknowingly made payments on a debt at terms far worse than those she agreed to. The terms of RIC #2 are substantially worse and impose a much larger finance charge, down payment, monthly payment and purchase price.

WHEREFORE, Plaintiff Ms. Perta respectfully requests this Honorable Court:

I. Award Ms. Perta actual damages;
II. Award Ms. Perta punitives damages for Bettenhausen's willful fraudulent conduct; and
III. Any other such relief this Honorable Court finds just.

## COUNT V
## Declaratory Judgment Act
*Against Santander & Tek-Collect*

82. Plaintiff incorporates and realleges paragraphs 1-51.

83. The Declaratory Judgment Act provides, in relevant part, that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

84. Because the contract sought to be enforced by Defendants Santander and Tek-Collect was procured through fraud and was the result of forgery, it is void.

85. 815 ILCS 375/17 states that "[a]ll defenses available against a holder in due course of a negotiable instrument under subsection (2) of Section 3-305 of the Uniform Commercial Code are available to a buyer under a retail installment contract notwithstanding any agreement to the contrary."

86. As a result, any debt allegedly due from Ms. Perta to Tek-Collect or to Santander is void and subject to her defense of fraud.

WHEREFORE, Plaintiff Ms. Perta respectfully requests this Honorable Court:

IV. Find that an actual justiciable controversy exists between the parties;

V. Find that as a result of Bettenhausen's fraud, the Retail Installment Contract sought to be enforced against Ms. Perta is void *ab initio*;

VI. Order that Defendant Santander and Tek Collect take corrective action regarding its furnishing of incorrect consumer credit information related to RIC #2;

VII. Any other such relief this Honorable Court finds just.

Respectfully submitted,

By: */s/Steven J. Uhrich*
One of Plaintiffs' Attorneys

Roger Zamparo, Jr.
ARDC: 3123737
Steven J. Uhrich
ARDC: 6310369
ZAMPARO LAW GROUP, P.C.
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
T. (224) 875-3202
F. (312) 276-4950
roger@zamparolaw.com
steven@zamparolaw.com

## JURY TRIAL

Plaintiff hereby demands a trial by jury for all issues so triable.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to plaintiff, the events described herein, any third party associated with any account, sale or file associated with plaintiff, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If defendant is aware of any third party that has possession, custody, or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the defendant.